UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEVEN ARCHIBALD, NICOLLE BRADBURY, THOMAS TRUE, SHAWN MORRISSETTE, JOSEPH PHILLIPS, and MICHAEL HOLMES<br><br>     Plaintiffs,<br><br> v.<br><br>GMAC MORTGAGE, LLC,<br><br>     Defendant. | Docket No. |

**DEFENDANT'S NOTICE OF REMOVAL**

NOW COMES Defendant, GMAC Mortgage, LLC ("GMAC"), and, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, files this notice of removal of this action from Maine Superior Court for Cumberland County. Copies of all process, pleadings, and orders served upon Defendant are attached hereto as follows: Exhibit A – original Complaint; Exhibit B – Return of Service; and Exhibit C – First Amended Complaint. In support of removal, GMAC states as follows.

**I.  JURISDICTION EXISTS UNDER 28 U.S.C. § 1332(a).**

If one or more named Plaintiffs satisfies the requirements of federal jurisdiction, then the supplemental jurisdiction statute authorizes the Court to exercise jurisdiction over any other claims arising from the same Article III case or controversy, including claims of other named Plaintiffs or of a putative class. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

### A. There Is Complete Diversity Of Citizenship.

1. All six named Plaintiffs allege that they are "Maine homeowners" or "former homeowners." (Plaintiffs' First Amended Class Action Complaint ("Comp.") ¶ 1)

2. All six named Plaintiffs allege that they are residents of Maine.[1] (Comp. ¶¶ 20-24, 138)

3. Accordingly, all six Plaintiffs are citizens of Maine. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001).

4. Plaintiffs also correctly allege that GMAC is a Delaware company with a principal place of business in Pennsylvania. (Comp. ¶ 25) Thus, GMAC is a citizen of both Delaware and Pennsylvania. 28 U.S.C. § 1332(c)(1).

5. Hence, complete diversity exists between the named Plaintiffs and GMAC. *See* 28 U.S.C. § 1332(a)(1).

### B. The Amount In Controversy Exceeds $75,000 With Respect To Each Plaintiff.

6. Each Plaintiff alleges that he or she is or was a homeowner whose home is or was subject to a mortgage. (Comp. ¶¶ 67, 81, 99, 116, 133, 138)

7. Each Plaintiff further alleges that GMAC or another entity with GMAC acting as servicer has filed a separate lawsuit seeking to foreclose on that Plaintiff's property (the "Foreclosure Proceedings"). (Comp. ¶ 69, 84, 101, 118, 135, 140)

8. Plaintiffs allege that GMAC submitted to the courts in the Foreclosure Proceedings certifications and/or affidavits in support of motions for summary judgment that were false. (Comp. ¶¶ 70-75, 85-90, 102-08, 119-25, 136, 141-43)

---

[1] Plaintiff Phillips alleges that his "family home" is in Maine but he is "residing currently" in Florida. (Comp. ¶ 24) Whether he is a resident of Maine or Florida makes no difference as neither defeats diversity here.

9. As a result of this alleged falsity, each Plaintiff claims that the particular affidavit or certification may be inaccurate with respect to such issues as how much is actually due on the loan or whether GMAC or the entity for which it acts as servicer is even the owner of the note and mortgage. (Comp. ¶ 191)

10. Plaintiff True, for example, alleges that, in his Foreclosure Proceeding, "[t]he complaint and certification asserted that GMAC Mortgage owned the loan when, in fact, they did not and do not." (Comp. ¶ 137) Similarly, Plaintiff Bradbury alleges that "GMAC Mortgage had sold [her] loan to FNMA a month [before entering into a loan modification with Bradbury] and no longer had the power as mortgagee to amend the terms of the loan." (Comp. ¶ 83)

11. Accordingly, Plaintiffs conclude that, because it is possible that GMAC or the entity for which it acts as servicer does not own the note and mortgage for their loan or is otherwise not entitled to foreclose, they may be injured by the improper "loss of their homes to foreclosure," the payment of attorneys' fees and costs sought by GMAC under the loan documents in connection with foreclosure proceedings, and the costs incurred by each Plaintiff in providing a defense to the foreclosure actions. (Comp. ¶ 176)

12. As a remedy, Plaintiffs seek both monetary and injunctive relief. With respect to the monetary relief for the injuries described in Paragraph 11, above, they seek payment of (1) "legal fees or costs paid [by each Plaintiff] as a result of the submission of any Certification" or of any "motion for summary judgment supported by the type of Affidavit that is the subject of this action," (2) compensatory damages, (3) attorneys' fees incurred by Plaintiffs in this litigation, and (4) punitive damages. (Comp. at Prayer for Relief) As explained below, those claimed damages far exceed $75,000 for each Plaintiff.

### 1. Compensatory Damages

13. Each Plaintiff contends that GMAC or the entity for which it acts as servicer does not own the note and mortgage on that Plaintiff's house and thus that GMAC should not be permitted to foreclose on the house or should have to pay damages for any foreclosure already completed. *See* Part II.B, above.

14. If any Plaintiff is incorrect, then GMAC will be entitled, under the loan documents, to collect full payment of the outstanding mortgage principal, plus interest, costs, and attorneys' fees, as requested in the Foreclosure Actions. *See* ¶¶ 16-17, below.

15. If any Plaintiff is correct, then GMAC is entitled to collect nothing from that particular Plaintiff or must repay Plaintiff the amount obtained in the completed foreclosure.

16. Thus, Plaintiff True, for example, seeks more than $205,000 in compensatory damages alone:

    a. On May 6, 2010, GMAC filed a complaint in York County Superior Court against True, alleging that True had obtained a mortgage from Sidus Financial, LLC, that the mortgage had been assigned to GMAC, and that True was in default on the mortgage. GMAC sought the amount then outstanding on the mortgage of $200,466.90, plus interest through March 19, 2010, in the amount of $4,314.85, continuing interest at 5.625%, late fees of $232.56, escrow advances of $424.40, property inspection fees of $26, and attorneys' fees in an amount to be determined. (Affidavit of John J. Aromando, Esq., dated November 4, 2010, Ex. 1 ("True Comp.") at ¶ 8)

    b. True expressly alleges in the present action that GMAC did not in fact own True's loan. (Comp. ¶ 137)

  c. If that is correct, GMAC will be entitled to nothing on its request for payment of more than $205,000. Conversely, if it is incorrect, then GMAC will be entitled to payment of more than $205,000.

17. The same is true of the other five Plaintiffs, against whom GMAC or the entity for which it acts as servicer filed suit seeking:

  a. From Plaintiff Morrissette, $155,229.45 in principal, plus interest through March 5, 2010, of $10,930.79, continuing interest at 6.5 %, escrow advances of $2,350.78, late charges of $544.60, expense advances of $989, property inspection fees of $78.38, and attorneys' fees. (Comp. Ex. 15 at ¶ 11) Thus, Plaintiff Morrissette seeks compensatory damages in excess of $168,000.

  b. From Plaintiff Phillips, $124,863.38 in principal, plus interest through March 4, 2010, of $6,784.70, continuing interest at 5.875%, escrow advances of $1,077.70, property inspection fees of $89.25, expense advances of $530, and attorneys' fees. (Comp. Ex. 21 at ¶ 11) Thus, Plaintiff Phillips seeks compensatory damages in excess of $131,000.

  c. From Plaintiff Bradbury, $74,343.47 in principal, plus interest in the amount of $3,867.06 through July 20, 2009, plus continuing interest, costs, and fees. (Comp. Ex. 9 at ¶ 7) Thus, Plaintiff Bradbury seeks compensatory damages in excess of $78,000.

  d. From Plaintiff Archibald, $190,063.35 in principal, plus interest in the amount of $13,265.34 through October 16, 2008, continuing interest, $820.04 in late fees, $2,949.53 in escrow advances, property inspection fees of $127.50, expense advances of $1,649.50, speed pay fees of $12.50, and attorneys' fees. (Comp. Ex. 7 at ¶ 9) Thus, Plaintiff Archibald seeks compensatory damages in excess of $206,000.

e. From Plaintiff Holmes, $263,829.55 in principal, interest through March 10, 2009, in the amount of $19,063.90, continuing interest, attorneys' fees and costs. (Comp. Ex. 25 at ¶ 7) Thus, Plaintiff Holmes seeks in excess of $282,000.

**2. Punitive Damages**

18. Punitive damages are properly considered in determining the amount in controversy. See, e.g., *Dow Agrosciences, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003) vacated on other grounds at 544 U.S. 431 (2005) (punitive damages must be considered if they are available); *Hayes v. Equitable Energy Resources Co.,* 266 F.3d 560, 572 (6th Cir. 2001).

19. Each Plaintiff will presumably take the position that he or she should be awarded punitive damages up to ten times the amount of compensatory damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process").

20. As explained in Part II.B.1, above, Plaintiffs seek compensatory damages ranging from around $80,000 to around $280,000. Thus, they likely will seek punitive damages ranging from $800,000 to in excess of $2,800,000.

21. The amount of punitive damages that each Plaintiff requests alone thus exceeds $75,000.

**3. Attorneys' Fees**

22. Attorneys' fees are properly considered in determining the amount in controversy when there is a statute providing for the award of fees. *Spielman v. Genzyme Corp*., 251 F.3d 1, 7 (1st cir. 2001).

23. Here, if Plaintiffs prove the allegations contained in their Complaint, attorneys' fees may be available under 5 M.R.S. § 213.

24. In litigating an individual case making the allegations contained herein, a reasonable estimate of the amount of fees that would be incurred by each Plaintiff exceeds $100,000. Indeed, Plaintiff Bradbury recently sought fees of more than $30,000 incurred in connection with litigating only a portion of her individual Foreclosure Action. (Aromando Aff. Ex. 2) Similarly, a member of the putative class recently asserted that, in the foreclosure proceeding against him, the foreclosing party "had incurred legal expenses of $79,561.99" and the putative class member had "incurred more than double that amount to date in defending against the foreclosure." (Aromando Aff. Ex. 3 at 4) Thus, each Plaintiff requests in excess of $75,000 in attorneys' fees alone.

### 4. Total Amount In Controversy

25. Adding the above figures, the amount in controversy for each Plaintiff based on the allegations and demands stated in their First Amended Class Action Complaint exceeds the following:

    a. True: $2.3 million.

    b. Morrissette: $1.75 million

    c. Phillips: $1.5 million.

    d. Bradbury: $950,000

    e. Archibald: $2.3 million.

    f. Holmes: $2.8 million

## II. JURISDICTION EXISTS UNDER 28 U.S.C. § 1332(d).

### A. Minimal Diversity Exists.

26. As explained in Part I.A, above, complete diversity exists. A fortiori, minimal diversity exists. *See* 28 U.S.C. § 1332(d)(2)(A).

### B. If All Proposed Classes Were Certified, They Would Exceed 100 Persons In Total.

27. The damages class is defined as "all Maine homeowners who have had a GMAC Mortgage Serviced foreclosure action initiated against them in Maine courts in the six years prior to the filing of this action" in connection with which GMAC filed either a "false Certification" or motion for summary judgment supported by a "false Affidavit." (Comp. ¶ 30) Since January 1, 2005, GMAC has initiated 1,156 foreclosure actions in Maine on mortgages that it serviced.[2] (Affidavit of Feyera Milkessa, dated November 4, 2010, at ¶ 2)

28. Thus, if all classes proposed by Plaintiff were certified, it would include well in excess of the 100 persons required by 28 U.S.C. § 1332(d)(5)(B).

### C. The Amount In Controversy Exceeds $5 Million In The Aggregate.

29. As explained in Part I.B.4, above, the amount in controversy between even the six named Plaintiffs, on the one hand, and GMAC, on the other, is approximately $11.5 million. Accordingly, given that there are 1156 members of the damages class, and given that Plaintiffs claim to be typical and adequate representatives of the class (Comp. ¶¶ 35-36), the amount in controversy would exceed two billion dollars, far in excess of the required $5 million. 28 U.S.C. § 1332(d)(2).

30. Indeed, even setting aside the request for damages arising from the "loss of [Plaintiffs'] homes to foreclosure," there is still in excess of $5 million in controversy. Plaintiffs additionally seek compensatory damages for "unfairly charging the accounts of Maine

---

[2] Plaintiffs seem to allege that all certifications or affidavits filed by GMAC during the class period were fraudulent. (Comp. ¶¶ 58-60) Similarly, the injunctive class is a subset of the damages class. Like the damages class, it includes "all Maine homeowners against whom a foreclosure case has been brought with GMAC as the servicer." (Comp. ¶29) It further limits that class to "where the home has not yet been sold pursuant to the foreclosure" or "where the homeowner still occupies the home." (Comp. ¶ 29) Accordingly, neither point changes the overall number of individuals in the putative class.

Homeowners for the attorney fees and costs of the Plaintiff" and for "unfairly imposing costs on Maine homeowners for the defense of the" foreclosure actions. (Comp. ¶ 176)

      a.    In uncontested foreclosure proceedings that proceed to sale, GMAC's incurs legal fees of between $1,250 and $1,500, plus expenses which typically range from $1500 to $2500. (Affidavit of Paul Peck, Esq., dated November 4, 2010, at ¶ 3) There can be additional legal fees for mediation, which can range from $300 to $800. (*Id.*) Using the approximate midpoint of $3,500, this request for damages would exceed $4 million in the aggregate on this request if all 1,156 members of the damages class were involved in uncontested foreclosures proceeding to sale. Plaintiffs contend that 70% of owners do not contest foreclosures. (Comp. ¶ 61) Thus, applying that percentage, Plaintiffs seek in excess of $2.8 million on this request.

      b.    In a contested foreclosure proceeding, GMAC attorneys' fees and costs can fluctuate widely, from $500 to in excess of $100,000, plus expenses. (Peck Aff. ¶ 4) It is fair to assume that a foreclosure defendant's fees would be similar. Indeed, Plaintiff Bradbury recently sought fees of more than $30,000 incurred in connection with litigating only a portion of her Foreclosure Action. (Aromando Aff. Ex. 2) Similarly, a member of the putative class – who is represented by many of the same lawyers in this case – recently asserted that, in the foreclosure proceeding against him, the foreclosing party "had incurred legal expenses of $79,561.99" and the putative class member had "incurred more than double that amount to date in defending against the foreclosure." (Aromando Aff. Ex. 3 at 4) Thus, were all 1,156 members of the putative class involved in contested foreclosure proceedings, and assuming even a modest amount of fees incurred collectively by both sides of $20,000, this request for damages on behalf of the putative class would exceed $23 million in the aggregate. Plaintiffs allege that 30% of

owners appear and defend foreclosure actions. (Comp. ¶ 61) Accordingly, applying that percentage, Plaintiffs may seek on the order of $7 million in the aggregate on this request.

      c.     In total, the above forms of compensatory damages sought are in excess of $8.5 million in the aggregate.

31. Plaintiffs will likely then seek $85 million in punitive damages. *State Farm*, 538 U.S. at 425.

32. Plaintiffs will also then seek attorneys' fees. In a recent class proceeding involving some of these same lawyers, those lawyers submitted documentation in support of a motion for approval of attorneys' fees stating that the combined "lodestar" of Plaintiffs' counsel in that case was in excess of $2,818,161.25. *See Mogel v. Unum Life Ins. Co. of Am.*, 1:07-cv-10955 (D. Mass.) (Pacer Docket Items 96-97). Accordingly, the request for attorneys' fees could well approach $3 million (or more).

33. In sum, the amount in controversy exceeds $2 billion in the aggregate. Even setting aside the claim for damages as a result of the loss of Plaintiffs' homes, the amount in controversy in the aggregate exceeds $95 million.[3]

---

[3] Plaintiffs allege that "Plaintiff and the Proposed Class limit their total class wide claims to less than…$4,999,999." (Comp. ¶ 19) "[C]ourts need not accept the plaintiffs' allegations regarding the amount in controversy when it appears to a reasonable probability that more than the jurisdictional minimum is at issue." *In re Hannaford Bros. Co.*, 564 F.3d 75, 79 (1st Cir. 2009); *accord Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 49 n.2 (1st Cir. 2009) (It "is far from evident to us…why the defendant should be put to a higher standard simply because the plaintiffs have pled an amount under $5 million."); *Smith v. Nationwide Property*, 505 F.3d 401, 407 (6th Cir. 2007) (A "disclaimer in a complaint regarding the amount of recoverable damages does not preclude a defendant from removing the matter to federal court upon a demonstration that damages are 'more likely than not' to 'meet the amount in controversy requirement…'"); *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009) ("[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum."). In any event, the damage limitation alleged is ambiguous as to what claims are "class wide claims" and what claims are not.

**III.    REMOVAL IS TIMELY AND OTHERWISE PROPER.**

34. The United States District Court for the District of Maine is the federal district embracing the place where this action was filed.

35. Plaintiffs served GMAC with a copy of the Complaint on October 5, 2010.

36. Plaintiffs filed an Amended Complaint on November 2, 2010.

37. GMAC filed this notice of removal on November 4, 2010.

38. Accordingly, Removal is timely in that no more than 30 days passed between the service of the Complaint and the filing of this notice of removal.  28 U.S.C. § 1446(b).

Dated this 4th day of November 2010.

/s/ John J. Aromando
John J. Aromando
Gavin G. McCarthy

Pierce Atwood LLP
One Monument Square
Portland, ME 04101
(207)-791-1100

*Attorneys for Defendant GMAC Mortgage, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2010, I electronically filed, via e-mail to the U.S. District Court in Portland, Maine, Defendant GMAC Mortgage, LLC's Notice of Removal and served the same, via e-mail upon counsel for Plaintiffs addressed as follows:

| | |
|---|---|
| Andrea Bopp Stark | andrea@molleurlaw.com |
| Thomas Cox | tac@gwi.net |
| Nina Simon | Nina.Simon@self-help.org |
| Charles Delbaum | cdelbaum@nclc.org |
| Arielle Cohen | ariellecohen@nclc.org |
| Stuart Rossman | srossman@nclc.org |

DATED:  November 4, 2010         /s/ John J. Aromando
                                 John J. Aromando

                                 PIERCE ATWOOD, LLP
                                 One Monument Square
                                 Portland, ME 04101
                                 207-791-1100

                                 *Attorneys for Defendant GMAC Mortgage, LLC*